IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

H.H., *et al.*,

                  Plaintiffs,

       v.                     Civil Action Number 3:07cv223

CHESTERFIELD COUNTY
SCHOOL BOARD, *et al.*,

                  Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on defendants Marcus J. Newsome ("Newsome")'s and Chesterfield County School Board ("CCSB")'s motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), defendants' motions for summary judgment, and defendants Wanda Moffett ("Moffett")'s and Ann Minguzzi ("Minguzzi")'s motion for protective order, and on the plaintiffs' motion to continue under Fed.R.Civ.P. 56(f) and second motion to continue under Rule 56(f). For the reasons stated herein, defendants' motion to dismiss is granted in part and denied in part. Defendants' motions for summary judgment are held in abeyance, and defendants' motion for protective order is denied. Plaintiffs' motion for continuance under Rule 56(f) is granted.

**I. Background**

      H.H. is a six-year-old girl with severe cognitive and physical disabilities. She suffers from cerebral palsy and polymicrogyria, a seizure disorder. H.H. cannot walk, but she can crawl, and she is mobile. She is transported around in a wheelchair into which she is strapped for her safety, but there is no medical reason for her to remain in her wheelchair when

she is not being transported.  H.H. has not learned to speak, but she communicates by cooing, screeching, growling and screaming.

For the 2005-2006 school year, CCSB placed H.H. in Moffett's special education kindergarten class at O.B. Gates Elementary School ("O.B. Gates"), a "magnet" school specially equipped to serve children with mild to severe disabilities.  H.H. attended kindergarten at O.B. Gates from September 19, 2005 until April 19, 2006.  Minguzzi served as the teacher's aide for Moffett's class for at least part of this time.  The parties dispute whether H.H.'s mother and co-plaintiff, H.F., agreed to an Individualized Education Plan ("IEP") for H.H. for the school year.[1]  Regardless, CCSB employees were to provide H.H. with a number of special education services appropriate for a kindergarten-aged student, including physical therapy, occupational therapy, speech therapy, music training, library training, art training, physical education training, and hygiene instruction.  H.H.'s school-day schedule was also supposed to include floor play, mobility activity, recess, classroom group activity, and lunch.

According to H.F., as the school year at O.B. Gates progressed, H.H. began showing extreme agitation and anxiety when H.F. drove H.H. to school in the mornings and picked her up in the afternoons.  H.F. claims that H.H. also screamed more frequently and exhibited increased seizure activity.  On April 18, 19, and 20, 2006, H.F. placed a small digital electronic recording device in H.H.'s wheelchair.  The plaintiffs allege that the digital recordings establish that Moffett, Minguzzi, and other CCSB employees unnecessarily strapped and restrained H.H. in her

---

[1]Pursuant to the federal "Individuals with Disabilities Education Act" ("IDEA"), CCSB is required to provide each child with special needs services consistent with an IEP.

wheelchair for hours at a time, provided H.H. with little or no services, made derogatory comments about H.H. and H.F., made plans to predetermine the results of H.H.'s upcoming IEP meeting, and expressed retaliatory intent toward H.H. and H.F.  H.F removed H.H. from O.B. Gates after listening to the digital recordings.

The defendants argue that during the 2005-2006 school year, H.H. consistently received instruction, therapy, and training from Moffett and Minguzzi.  According to the defendants, H.H. was not strapped down or restrained in her wheelchair for long periods of time, but instead engaged in floor play, group exercises, and therapy out of her wheelchair, and was only in her wheelchair when it was required for her instruction or physical safety.  Defendants claim that H.H. had a history of frequent screaming before she arrived at O.B. Gates, and that she did not suffer from increased seizure activity during her time as Moffett's and Minguzzi's student.

Plaintiffs filed the present action on April 17, 2007, seeking declaratory and injunctive relief, as well as compensatory and punitive damages.  Plaintiffs assert that defendants denied H.H. services and discriminated against her based on her disability, in violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504") (Count I) and the Americans with Disabilities Act ("ADA") (Count II).  Plaintiffs also claim that defendants retaliated against H.H. and her mother, H.F., in violation of the ADA (Count III).  In addition, plaintiffs assert that defendants deprived H.H. of her personal liberty without due process of law in violation of the Fourteenth Amendment, and they bring suit for that alleged violation under 42 U.S.C. § 1983 (Count IV).  Lastly, plaintiffs assert common law tort claims against the defendants, including false imprisonment (Count V) and intentional infliction of emotional distress (Count VI).

The defendants have moved the Court to dismiss Newsome as a defendant and to dismiss Counts IV, V, and VI against CCSB.  Defendants Moffett and Minguzzi have filed a motion for summary judgment in their favor on Counts IV, V, and VI, and defendants CCSB and Newsome have moved for summary judgment in their favor on all of the claims.  Citing the defense of qualified immunity, Moffett and Minguzzi have also filed a motion for protective order, pursuant to Fed.R.Civ.P 26(c), to suspend discovery as to them in this case pending a ruling from the Court on their motion for summary judgement.  Plaintiffs have moved the Court for a continuance under Fed.R.Civ.P. 56(f) for a reasonable period of time to permit discovery to be obtained in opposition to the defendants' motions for summary judgment.

## II. Legal Analysis

**A. Motions to Dismiss**

Plaintiffs are suing Newsome in his official capacity as Superintendent of CCSB.  Suits against an officer of an entity in his official capacity " generally represent only another way of pleading an action against an entity of which an officer is an agent."  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n.55 (1978).  "An official capacity suit is not a suit against the official personally, for the real party in interest is the entity."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  The Fourth Circuit has specifically held that a claim against a school superintendent in his official capacity "is essentially a claim against the [School] Board and thus should be dismissed as duplicative." Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004).  Each of the six counts in the complaint is asserted against the School Board and only relate to Newsome within the scope of his agency relationship with CCSB.  The Court finds that any

claim against Newsome in his official capacity is duplicative of the claims against CCSB. Therefore, the Court will grant defendants' motion to dismiss Newsome from the action.

The Court will deny defendants' Rule 12(b)(6) motion to dismiss Count IV against CCSB. Count IV alleges that CCSB is liable under 42 U.S.C. § 1983 for violations of H.H.'s constitutional liberty interests. A Rule 12(b)(6) motion to dismiss tests whether the complaint is legally sufficient. See Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). Courts generally disfavor dismissals under Rule 12(b)(6) because of their *res judicata* effect. Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1471 (4th Cir. 1991). A court should deny the motion unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Courts must treat the complaint's allegations as true and construe them in the light most favorable to the plaintiff. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

To hold a school board liable for the acts of its employees, a plaintiff must show that the school board ratified such action. See Ashby v. Isle of Wight County Sch. Bd., 354 F. Supp 2d 616, 625 (E.D. Va. 2004). The Court finds that, taking plaintiffs' allegations as true, CCSB may be held liable under 42 U.S.C. § 1983 for violating H.H.'s constitutional liberty interests if the facts show that CCSB ratified the alleged acts and failures. Given that the parties have not completed discovery, and that all relevant facts have not been uncovered, the Court finds that it is too early to dismiss Count IV against CCSB. Defendants may refile the motion to dismiss or file a motion for summary judgment in favor of CCSB on Count IV once discovery is complete.

Turning to defendants' motion to dismiss Counts V and VI against CCSB, the Court finds that CCSB is entitled to sovereign immunity with respect to the state tort claims, and accordingly, the Court will grant defendants' motion. In Virginia, a school board is considered "an arm of the state" and therefore enjoys the sovereign immunity of the state. See Kellam v. Sch. Bd. of the City of Norfolk, 202 Va. 252, 254 (1960). "In the absence of a statute waiving its immunity, a school board is immune from liability arising out of negligence and intentional tort claims." Hill v. James, 2006 U.S. Dist. LEXIS 69453, *14 (E.D. Va. 2006). Plaintiffs argue that CCSB is not entitled to sovereign immunity because, "School Boards . . . are not state agencies nor are employees of school boards state employees." Va. Code § 8.01-195.2. However, plaintiffs have misconstrued and misapplied Va. Code § 8.01-195.2, which simply defines the term "school boards" for use in Va. Code § 8.01-195.3, which waives the immunity of the Commonwealth of Virginia in certain cases. The statute actually excludes school boards from the waiver of immunity applied to the state, thus preserving sovereign immunity for school boards.

**B. Motions for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Fed. R. Civ. P. 56. Summary judgment is appropriate where parties do not dispute material facts that might affect the outcome of an action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Under Rule 56, the movant bears the burden of proving the absence of any genuine issues of material fact, and the Court must view the facts and any justifiable and legitimate inferences drawn therefrom in the light most favorable to the non-moving party. Id. at 248.

Courts must grant motions for summary judgment if evidence established by the pleadings, affidavits and exhibits shows that there is no genuine issue as to any material fact and that the moving party should prevail as a matter of law. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986). The non-moving party must reply to a motion for summary judgment with affidavits, depositions, interrogatories or other evidence to show a genuine issue for trial. Id. at 324.  The requirement that the non-moving party respond specifically to a summary judgment motion is qualified by Rule 56(f)'s requirement that "summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Anderson, 477 U.S. at 250 n. 5.  Generally speaking, "sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party." Harrods Ltd. v. Sixty Internet Names, et al., 302 F.3d 214, 247 (4th Cir. 2002) (citing 10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)).

The Court finds that the parties dispute material facts regarding defendants' treatment of the plaintiffs that will affect the outcome of this case.  Further, plaintiffs have not had the opportunity to conduct the discovery necessary to uncover the facts relevant to their opposition. Many of the relevant facts are exclusively in the control of defendants because this case involves events that largely occurred behind closed doors at O.B. Gates. Both parties have issued discovery, but plaintiffs have only recently begun to receive responses.  Plaintiffs allege that some of the evidence, in the form of emails, may have been destroyed, and plaintiffs are seeking a means to recover that evidence. The Court finds that defendants' motions for summary

judgment are premature, and the Court will not rule on these motions until plaintiffs have had adequate time to conduct discovery.

**C. Motion for Protective Order**

Based on their defense of qualified immunity, defendants Moffett and Minguzzi move the Court to enter a protective order suspending discovery as to them in this case pending a ruling from the Court on their motion for summary judgement. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal [immunity] question." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). To resolve the legal immunity question, a court must determine whether the plaintiff's complaint adequately alleges that the public official violated a clearly established statutory or constitutional right of another known to or knowable by a reasonable person. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The Court finds that plaintiffs' complaint does allege a violation of H.H.'s fourteenth amendment rights to substantive due process, specifically her right to be free from bodily restraint. "[T]he right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process." Schillingford v. Holmes, 634 F.2d 263, 265 (5th Cir. 1981) (citing Hall v. Tawney, 621 F.2d 607, 613 (4th Cir. 1980)). Although no precedent directly establishes that keeping a child unnecessarily restrained in her wheelchair for long periods of time damages her bodily integrity, in the context of qualified immunity, "not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked" are "clearly established."

Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992). The Court finds that in this case H.H.'s right to be free from unnecessary bodily restraint in her wheelchair falls within the core constitutional right to not be deprived of liberty without due process of law.

When inquiring as to whether a reasonable teacher should know that unnecessarily restraining a child in her wheelchair for long periods of time violates the child's constitutional right to be free from bodily restraint, "it suffices that the teacher be aware of general, well-developed legal principles." Jefferson v. Ysleta Independent Sch. Dist., 817 F.2d 303, 305 (5th Cir. 1987). The facts alleged by plaintiffs in their complaint, if proven, persuade the Court that in April 2006, a competent teacher and a teacher's aide, especially ones trained to serve students with disabilities, knew or should have known that it was constitutionally impermissible to restrain in a wheelchair for unnecessarily long periods of time, a mobile child who uses her wheelchair for transportation purposes and does not need to be kept in the wheelchair for medical or other reasons.

Having determined that plaintiffs' complaint does allege the violation of a constitutional right, and that the right was clearly established at the time of the alleged violation, the Court now must inquire as to whether any facts material to defendants' claim of qualified immunity are in dispute. The parties dispute whether defendants kept H.H. restrained in her wheelchair for long periods of time, and this disputed issue of material fact is central to defendants' qualified immunity claim. The Fourth Circuit has held that "ordering discovery on the issue of immunity . . . [is] well within the discretion of the district court." American Civil Liberties Union, Inc. v. Wicomico County, 999 F.2d 780, 787 (4th Cir. 1993). The Court finds that it must permit

plaintiffs to conduct discovery to obtain the facts from Moffett and Minguzzi necessary to resolve the disputed issue of material fact before it can rule on defendants' qualified immunity claim. Accordingly, the Court will deny defendants' motion for protective order.

**D. Motion for Continuance Under Rule 56(f)**

Plaintiffs have filed two motions seeking an extension of time to conduct appropriate discovery to fully respond to defendants' motions for summary judgment. Rule 56(f) of the Federal Rules of Civil Procedure allows courts to "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had." Fed. R. Civ. P. 56(f). As stated above, the Court finds that the parties dispute genuine issues of material fact, and that plaintiffs have not had adequate time to discover information essential to the opposition of the motions for summary judgment. It is especially important to afford the plaintiffs sufficient time to shed light on the facts in this case, where the opposing party has allegedly destroyed electronic documents. Therefore, the Court will grant plaintiffs' motion to continue under Rule 56(f). The Court suggests that plaintiffs file appropriate motions under Fed. R. Civ. P. 26(b) to streamline the proceedings.

### III. Conclusion

For the foregoing reasons, the Court will grant defendants' motion to dismiss Newsome from the action, will deny defendants' Rule 12(b)(6) motion to dismiss Count IV against CCSB until plaintiffs have conducted discovery, and will grant defendants' motion to dismiss Counts V and VI against CCSB. The Court will hold defendants' motions for summary judgment in abeyance until plaintiffs have conducted discovery. The Court will deny defendants' motion for

protective order, and will grant plaintiffs' motion for continuance under Rule 56(f).

An appropriate order shall issue.

November 29, 2007                             _____/s/_____
DATE                                          RICHARD L. WILLIAMS
                                              SENIOR UNITED STATES DISTRICT JUDGE